**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BRIAN KEIM, *individually, and on*
*behalf of other similarly situated individuals*,

      Plaintiff,                                      CLASS ACTION

v.                                                        JURY TRIAL DEMANDED

TRADER JOE'S COMPANY,
*a California corporation*,

      Defendant.
_____/

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE**
**FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)**

Plaintiff, Brian Keim ("Plaintiff"), on behalf of himself and others similarly situated individuals, sues Defendant, Trader Joe's Company ("Defendant"), and alleges the following upon information and belief, and his own personal knowledge.

**I.**     **NATURE OF THE CASE**

1.     This action arises from Defendant's knowing or reckless violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., ("FCRA"), which requires persons that accept debit cards or credit cards at the point-of-sale to truncate certain card number information on printed receipts provided to consumers. Despite the clear language of the statute, Defendant knowingly or recklessly failed to comply with FCRA by printing ten (10) digits of its customers' credit card and/or debit card numbers on transaction receipts. As a result of Defendant's unlawful conduct, Plaintiff and the Class who engaged in credit or debit card transactions with Defendant during the time frame relevant to this action have suffered a violation of their substantive rights under § 1681c(g), an

1

invasion of their privacy, breach of their confidence in the safe handling of their account information, exposure to an elevated risk of identity theft, and were unfairly burdened with the need to keep or destroy the receipt, to prevent further disclosure of their account information.[1] Accordingly, Plaintiff and the Class are entitled to an award of statutory damages and other relief as further detailed herein.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, because the claims in this action arise from the violation of a federal statute.

3. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here. Defendant does business in this District and its contacts here are sufficient to subject it to personal jurisdiction.

## III. PARTIES

4. Plaintiff Brian Keim is a natural person who, at all times relevant to this action, was and is a citizen of the State of Florida whose domicile is in Palm Beach County, FL.

5. Defendant Trader Joe's Company ("Trader Joe's") is a California corporation whose principal address is 800 S. Shamrock Avenue, Monrovia, California 91016, and whose registered agent for service of process is Paracorp, Inc., 155 Office Plaza Drive, First Floor, Tallahassee, Florida 32301.

---

[1] Recently, the Eleventh Circuit Court of Appeals held that producing transaction receipts that fail to truncate all but the last five digits of a credit or debit card number causes consumers to incur multiple concrete harms. *See Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1188-1189 (11th Cir. 2019).

2

6.    Defendant is a well-known grocery store chain which owns and operates more than 488 stores located throughout the United States, including its location at 2560 PGA Blvd., Palm Beach Gardens, Florida 33410.

### IV.    FACTUAL ALLEGATIONS

#### A.    Background of FACTA

7.    Identity theft is a serious issue affecting both consumers and businesses. As of 2018, a Harris Poll revealed that nearly 60 million Americans have been affected by identity theft.[2] There were a record high 16.7 million victims of identity fraud in 2017 alone, and account takeovers (when a thief opens a credit card account or other financial account using a victim's name and other stolen information) tripled in 2017 from 2016, causing $5.1 billion in losses.[3]

8.    Congress enacted FACTA to prevent identity theft and related harm. See Pub. L. No. 108-159 (December 4, 2003) ("An Act . . . to prevent identity theft . . . and for other purposes.")

9.    Upon signing FACTA into law, President George W. Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id.*

10.    One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a person's credit or bank account from a receipt provided to the person at the point of sale, which, through any number of ways, could fall into the hands of someone other than the cardholder.

---

[2] Source: https://www.lifelock.com/learn-identity-theft-resources-how-common-is-identity-theft.html (Last viewed: July 12, 2019).
[3] Source: https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (Last viewed: July 12, 2019).

11. Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> ***Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.***

15 U.S.C. § 1681c(g) (the "Receipt Provision").

12. After enactment, FACTA provided three (3) years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

13. The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals."[4] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

14. Card-issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[5]

---

[4] *Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft*, PR NEWSWIRE (Mar 06, 2003) https://www.finextra.com/newsarticle/8206/visa-to-hide-card-numbers-in-bid-to-cut-identity- (Last viewed: July 12, 2019).
[5] *Rules for Visa Merchants*, VISA (Sept. 1, 2007), http://www.runtogold.com/images/rules_for_visa_merchants.pdf (Last viewed: July 12, 2019).

4

15. Because a handful of large retailers did not comply with their contractual obligations to the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 to make temporary changes to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on credit and debit card transaction receipts shortly after FACTA's enactment.[6] Importantly, the Clarification Act reaffirmed Congress's belief that "proper truncation" of the account number on the receipt (*i.e.* masking all but the last five digits) protects cardholders from identity theft or credit card fraud.

16. Accordingly, card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.) To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

*See* Exhibit A, Visa Best Practices Alert.

17. As noted above, the processing companies have required truncation of all but the last five digits of credit card or debit card numbers and expiration dates on point-of-sale transaction receipts since 2003 and still require it. For example, American Express requires:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members.

---

[6] *H.R. 4008 (110th): Credit and Debit Card Receipt Clarification Act of 2007*, GOV TRACK, https://www.govtrack.us/congress/bills/110/hr4008/text  (Last viewed: July 12, 2019).

5

>Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

*See* Exhibit B, American Express Merchant Requirements.

18. Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

>A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

*See* Exhibit C, Mastercard Acceptance Procedures.

19. According to data from the Federal Trade Commission's 2018 Consumer Sentinel Network Data Book, Florida ranks No. 1 for the highest per capita rate of reported fraud and other types of complaints.[7] For identity theft, Florida is ranked No. 4 in the country with a total of 37,797 complaints.[8] Also, some of the top metro areas for identity theft are in Florida, according to the report. The fifth highest rate of identity theft in the United States takes place in the Miami-Fort Lauderdale-West Palm Beach metropolitan area with 280 reports per 100,000 people.[9]

20. So problematic is the crime of identity theft that the main credit reporting agencies, Experian, Equifax, and Transunion, set-up a free website (http://www.annualcreditreport.com) to comply with FACTA requirements and to provide the U.S. citizens a means of monitoring their credit reports for possible identity theft.

21. FACTA clearly prohibits the printing of more than the last five (5) digits of the card

---

[7] Source: https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2018/consumer_sentinel_network_data_book_2018_0.pdf (Last viewed: July 12, 2019).
[8] *Id.*
[9] *Id.*

6

number to protect persons from an increased risk of identity theft.

### B.     Defendant's Prior Knowledge of FACTA

22.    Most of Defendant's business peers and competitors currently and diligently ensure their credit card and debit card receipt printing process remains in compliance with FACTA by consistently verifying their card machines and devices comply with the truncation requirement. Defendant could have readily done the same.

23.    Defendant's vendor[10] of point-of-sale terminals, Verifone, Inc., specifically admonishes its merchant-customers (including Trader Joe's) to comply with FACTA, stating in its terms of service:

> Compliance with Law.
>
> **Merchant shall comply with all applicable laws,** rules, and regulations in connection with these Terms and Conditions, the operation of its business, and its use of the Verifone Solution; such obligation shall include Merchant's compliance with export control laws, **the Fair and Accurate Credit Transactions Act of 2005 ("FACTA") amendment to the Fair Credit Reporting Act (including, but not limited to, responsibility for any information printed on receipts)…**
>
> Source: https://www.verifone.com/tos-us-merchant.html (Release Date: March 25, 2018) (Last viewed: July 12, 2019) (boldface added) (formatting errors removed).

24.    In addition to being informed not to print more than the last five (5) digits of credit or debit cards on receipts, Defendant was contractually prohibited from doing so. Defendant accepts credit cards and debit cards from all major issuers. As discussed, *supra*, these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

---

[10] Source: http://mobilepaymentmagazine.com/trader-joes-apple-pay#more-4703 ("Kiosks at Trader Joe's checkout counters across the U.S. have been seeing upgrades in recent weeks and months to VeriFone touchscreen machines.") (Release Date: May 15, 2015) (Last viewed: July 13, 2019).

**C.    Plaintiff's Factual Allegations**

25.    On July 9, 2019, Plaintiff made a purchase using his personal Visa® debit card at the Trader Joe's store located at 2560 PGA Blvd., Palm Beach Gardens, Florida 33410.

34.    Plaintiff was subsequently provided an electronically printed receipt bearing the first six (6) and last four (4) digits of his debit card account number.

35.    In addition to bearing ten (10) digits of his debit card number, the receipt also identifies item(s) in the transaction, the transaction date and time, and store location.

36.    As a direct result of Defendant's printing of a receipt bearing the first six (6) and last four (4) digits of his debit card account number, Plaintiff took action to safeguard the receipt.

37.    Defendant's disclosure of the first six (6) and last four (4) digits of Plaintiff's debit card account number invaded his privacy by disclosing his private financial information to the store employee who provided the receipt.

38.    Defendant's memorialization of the first six (6) and last four (4) digits of Plaintiff's debit card account number on the transaction receipt exposed Plaintiff to an increased risk of identity theft.

39.    Defendant's disclosure of the first six (6) and last four (4) digits of Plaintiff's debit card account number breached Plaintiff's confidence in the proper handling of his account information.

**D.    Defendant's Misdeeds**

40.    Defendant exercises control of each and every one of its Trader Joe's stores, including but not limited to the type of point-of-sale terminals in use at said stores.

41.    At all times relevant herein, Defendant was acting by and through its subsidiaries, agents, servants and/or employees, including without limitation those at the Palm Beach Gardens

store and the employees thereof, each of whom were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

42.     At all times relevant herein, Defendant's violation of FACTA, as well as that of its subsidiaries, agents, servants and/or employees, including without limitation Defendant's Palm Beach Gardens location and the employees thereof, was knowing or reckless.

43.     Defendant utilizes the same receipt printing equipment and receipt format at all Trader Joe's locations in the United States.

44.     Plaintiff is informed and believes that Defendant implements, oversees, and maintains control over the same debit and credit card payment processing policies, practices, and procedures for customer debit and credit card transactions at all of its retail locations nationwide by, without limitation, negotiating, entering into, and acting pursuant to various contracts and agreements with the electronic payment processing company whose technology Defendant uses to process all such transactions at its retail locations nationwide.

45.     It is Defendant's policy and procedure to provide an electronically printed receipt to individuals at the point-of-sale – *i.e.*, immediately upon receipt of credit or debit card payment.

46.     Plaintiff is informed and believes that Defendant and/or its point of sale system maintains records of all payment transactions and stores customers' information, including duplicate hard copies and electronic copies of all payment receipts provided to customers, and can easily provide records of all electronically printed receipts provided to its patrons during the time frame relevant to this action.

47.     Notwithstanding its knowledge of the requirements of FACTA and the dangers imposed upon consumers through its failure to comply, Defendant has issued, during the time

frame relevant to this Complaint, thousands of point-of-sale receipts containing the first six (6) and last four (4) digits of credit and debit card account numbers.

48. By shirking its FACTA obligations on such a large scale, Defendant systematically violated Plaintiff's and the other putative Class members' privacy, breached their confidence, mishandled their personal account information, and exposed them to a heightened risk of identity theft. Defendant's conduct alleged herein resulted in the disclosure of Plaintiff's and the Class members' private financial information to persons who might find the receipts in the trash or elsewhere, as well as the Defendant's retail employees who handled the receipts.

49. Simply put, by printing numerous transaction receipts in violation of this long-standing and well-known federal statute, Defendant has caused – to paraphrase the words of the Honorable Judge Posner (retired) – "an unjustifiably high risk of harm that [wa]s either known or so obvious that it should [have been] known" to Defendant. *Redman v. RadioShack Corp.*, 768 F.3d 622, 627 (7th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

50. In view of the substantial harm and other risks to Plaintiff and the Class caused by Defendant's knowing or reckless conduct, and the likelihood that such harms and risks will continue absent judicial relief, the Court should enjoin Defendant from continuing to print receipts at its point of sale terminals in violation of FACTA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (pronouncing that a defendant is liable for willfully violating Fair Credit Reporting Act where a violation is committed with "reckless disregard" for the law).

### V. CLASS ALLEGATIONS

51. This action is brought as a Class Action under Fed. R. Civ. P. 23. Plaintiff proposes the following class, subject to modification by the Court as required:

> *All persons in the United States who, within the two (2) years prior to the filing of the complaint through the date of the Court's order granting class certification, (i) engaged in one or more transactions using a debit card or credit card at one or more Trader Joe's store locations in the United States, and (ii) at which time Defendant's point-of-sale system was programmed to generate a printed customer receipt displaying more than the last 5 digits of the credit or debit card number used in connection with such transaction(s).*

52. Plaintiff falls within the class definition and is a member of the class. Excluded from the class is Defendant and any entities in which Defendant has a controlling interest, Defendant's attorneys, agents, and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and any claims for personal injury, wrongful death, and/or emotional distress.

### A. Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.

53. The class is ascertainable. It is defined based on objective criteria. Also, its members generally can be identified based in whole or in part on information within Defendant's possession, custody, or control, as well as from records of the entities that processed the card transactions at issue, and records of the banks that issued the credit/debit cards. *See, e.g., Legg v. Spirit Airlines, Inc.*, No. 0:14-cv-61978, ECF No. 146 at p. 14 (S.D. Fla. July 11, 2016) (describing process of issuing subpoenas to credit card processors and banks to locate class members); *Muransky v. Godiva Chocolatier, Inc.*, No. 0:15-cv-60716, ECF No. 74 at p. 12 (S.D. Fla. Sept. 12, 2016) (same); *Guarisma v. Microsoft Corp.*, No. 15-cv-24326-CMA, ECF No. 58 ¶¶ 4-6 (S.D. Fla. Apr. 26, 2017) (same); *Flaum v. Doctor's Associates, Inc.*, 16-cv-61198-CMA, ECF No. 87 ¶¶ 4-6 (S.D. Fla. June 2, 2017) (same).

54. Defendant, throughout each of its locations, prints numerous credit and debit card receipts each day. The class period is two years. Therefore, the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action

11

will provide substantial benefit to the parties and the Court by avoiding a multiplicity of identical suits.

55.     Although FACTA does not distinguish between business and consumer transactions, all or most purchases at Defendant's retail location for which a FACTA-violative receipt is provided are paid with a consumer card, rather than a business card, because Defendant operates retail grocery stores. To the extent this is an issue, the payments made with the two types of cards are easily discernible: merchants are charged interchange fees for card transactions that vary based on whether the card is a business card or a consumer card. There are different interchange categories and codes assigned to each transaction that distinguish whether a card used for a transaction is a business card or a consumer card. Defendant and its merchant bank(s) could easily identify whether a particular transaction involved a business card or a consumer card.

56.     Further, the first six (6) digits of a credit or debit card would readily determine whether the corresponding card is a business or consumer card. That is because the first six (6) digits of a credit or debit card number contain what is known as the Bank Identification Number ("BIN") that represents several items of information, including whether the card is a consumer card or commercial (business) card. Finally, Visa, MasterCard, American Express and Discover only allow specific BINs and BIN ranges to identify consumer cards, and specific BINs and BIN ranges to identify commercial (business) cards. Consumer cards and business cards do not share the same BINs or BIN ranges.

57.     There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative class.

58. While all Class Members have experienced actual harm as previously explained herein, this suit seeks only statutory damages and injunctive relief on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

59. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the class include the following:

   a. Whether, within the two (2) years prior to the filing of this Complaint, Defendant and/or its agents employed a point-of-sale payment system programmed to generate credit or debit card transaction receipts containing more than the last five (5) digits of card number numbers;

   b. Whether Defendant's actions violate FACTA;

   c. Whether Defendant's violation was knowing or reckless;

   d. The extent of statutory damages for Defendant's violation; and

   e. Whether Defendant should be enjoined from engaging in such conduct in the future.

60. As a person who patronized one or more of Defendant's retail locations and was provided a printed receipt containing more than the last five (5) digits of his credit card, Plaintiff is asserting claims that are typical of the proposed class. Plaintiff will fairly and adequately represent and protect the interests of the class in that Plaintiff has no interests antagonistic to any member of the class, and has engaged competent class counsel.

61. The principal question is whether Defendant violated section 1681c(g) of the FCRA by providing Class Members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendant's violation was knowing or reckless.

62. Absent a class action, the class, along with countless future customers of Defendant's retail locations, will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy. Because of the size of the individual Class Members' claims, few Class Members could afford to seek legal redress for the wrongs complained of herein.

63. Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the Class Members' claims.

64. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is zero. The maximum statutory damages in an individual action for a violation of this statute are small, and the cost and effort needed to prosecute a claim to recover those small damages makes individual litigation infeasible. Conversely, the claims at issue are well-suited for class treatment given the commonality of claims and relative ease of management. For these reasons, FACTA cases are commonly certified for class treatment.

65. Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## COUNT I – VIOLATION OF 15 U.S.C. § 1681(c)(g)

66. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

67. 15 U.S.C. §1681c(g) states as follows:

*Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

68. This section applies to any "device that electronically prints receipts" ("Devices") at point of sale or transaction. 15 U.S.C. §1681c(g)(3).

69. Defendant employs the use of said Devices for point of sale transactions at each of its locations, including the Palm Beach Gardens location.

70. On or before the date on which this complaint was filed, Plaintiff and members of the class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

71. At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

72. Notwithstanding the three-year period to comply with FACTA and its accompanying provisions, and the years since FACTA became effective; and having direct knowledge of the Receipt Provision and FACTA as a whole; Defendant knowingly or recklessly violated and continues to violate the Receipt Provision.

73. By printing more than the last five (5) digits of Plaintiff's credit card number on Plaintiff's transaction receipt, Defendant caused Plaintiff and its other customers numerous injuries as described above. *See Muransky*, 922 F.3d at 1188-1189

74. As a result of Defendant's willful violations of the FCRA, Defendant is liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

15

\*     \*     \*

**WHEREFORE**, Plaintiff Brian Keim respectfully requests that this Court enter judgment in his favor and the class, and against Defendant Trader Joe's Company, as follows:

a. Granting certification of the Class;

b. Awarding statutory damages;

c. Awarding punitive damages;

d. Awarding injunctive relief;

e. Awarding attorneys' fees, litigation expenses and costs of suit, and;

f. Awarding such other and further relief as the Court deems proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 17, 2019

**BRIAN KEIM**, *individually, and on behalf of other similarly situated individuals*

*s/ Scott D. Owens, Esq.*
Scott D. Owens, Esq.

Scott D. Owens, Esq. (FBN 0597651)
**SCOTT D. OWENS, P.A.**
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Keith J. Keogh, Esq. (FBN 126335)
**KEOGH LAW, LTD.**
55 W. Monroe St., Ste 3390
Chicago, IL 60603
Tel: 312-726-1092

16

Fax: 312-726-1093
keith@keoghlaw.com


Joseph M. Hekmat, Esq.
**HEKMAT LAW GROUP**
11111 Santa Monica Blvd., Ste. 1700
Los Angeles, CA 90025
Tel: 424-888-0848
Fax: 424-270-0242
jhekmat@hekmatlaw.com

(*pro hac vice* application forthcoming)

17